IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-03190-CMA-STV

RACHEL O'CONNOR,
MATTHEW INGRAM, and
DAVID CRUZ,

    Plaintiffs,

v.

BMW OF NORTH AMERICA, LLC,

    Defendant.

---

**ORDER AFFIRMING AND ADOPTING THE JANUARY 7, 2020
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court upon the January 7, 2020 Recommendation (Doc. # 50) of United States Magistrate Judge Scott T. Varholak, wherein he recommends that this Court deny Defendant BMW of North America, LLC's Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Severance of Misjoined Claims (Doc. # 26). Defendant filed an Objection to the Recommendation (Doc. # 52), which, for the reasons described herein, the Court overrules. The Court affirms Magistrate Judge Varholak's Recommendation and denies Defendant's Motion.

### I.    BACKGROUND

The Magistrate Judge's Recommendation (Doc. # 50) provides a recitation of the factual and procedural background of this dispute and is incorporated herein by

reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Defendant's objections. The following facts are taken from the operative complaint. (Doc. # 22.) Those facts are deemed true for purposes of the instant Order.

Defendant is an organization that imports, assembles, markets, and distributes BMW automobiles in Colorado and throughout the United States. (Doc. # 50 at 2.) This case involves a dispute that arose from Plaintiffs' purchase of three BMW vehicles that Defendant manufactured and distributed. (Doc. # 22 at 5.)

On July 20, 2013, Plaintiff Matthew Ingram purchased a 2011 BMW 550xi from a BMW authorized dealer in Chicago. (*Id.* at 4.) On December 14, 2014, Plaintiff Rachel O'Connor purchased a used 2011 BMW 550xi from a BMW authorized dealer in Colorado. (*Id.* at 5.) Lastly, on October 17, 2015, Plaintiff David Cruz purchased a 2012 BMW 650i from a BMW authorized dealer in Colorado. (*Id.*)

Plaintiffs allege that for each vehicle purchase, they relied on the New Vehicle Limited Warranty (the "Warranty") in which Defendant promised to repair or replace components found to be defective in material or workmanship during the 4-years or 50,000-miles following the delivery of the vehicle to the consumer. (*Id.*) After purchasing the BMWs, Plaintiffs discovered that the vehicles consumed an excessive amount of oil as a result of their N63 engines. (*Id.* at 7.) Allegedly, the N63 engine is widely known in the automotive industry to be "defective," due to its over consumption of oil. (*Id.*) The defect required Plaintiffs to consistently refill the oil between regularly scheduled oil

changes to prevent "catastrophic" engine failure. (*Id.*) The vehicles also required additional maintenance and monitoring. (*Id.*)

Plaintiffs allege that Defendant failed to disclose the excessive oil consumption to consumers. (*Id.* at 9.) Additionally, Plaintiffs assert that Defendant was aware of the defect and its dangers because it issued several technical service bulletins directly to automotive dealers addressing the oil consumption. (*Id.*) As a result of the defect, Plaintiffs incurred significant out-of-pocket expenses, increased maintenance costs, and the potential for a life-threatening incident caused by engine failure. (*Id.* at 15.)

Accordingly, Plaintiffs initiated the instant case and assert the following four claims for relief:

- **Claim 1** – Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act;
- **Claim 2** – Breach of Express Warranty;
- **Claim 3** – Breach of Implied Warranty of Merchantability; and
- **Claim 4** – Violation of the Colorado Consumer Protection Act.

(*Id.* at 10–24.)

On March 28, 2019, Defendant filed a Motion to Dismiss for Failure to State a Claim or, in the Alternative, Severance of Misjoined Claims.[1] (Doc. # 26.) Plaintiffs filed a Response on May 30, 2019 (Doc. # 35), and Defendant filed a Reply on June 16, 2019 (Doc. # 42). Magistrate Judge Varholak issued his Recommendation that the

---

[1] The Court is aware that Defendant recently filed two similar Motions to Dismiss in United States District Courts, dealing with nearly identical allegations of a defect in the N63 engine. *See Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2019 WL 4861379 (E.D. Tex. Oct. 2, 2019); *see also Carroll v. BMW of N. Am., LLC*, No. 19-cv-000224-JMS-TAB, 2019 WL 4243153 (S.D. Ind. Sept. 6, 2019). Both Motions were denied.

Court deny Defendant's Motion on January 6, 2020. (Doc. # 50.) The instant Objection followed. (Doc. # 52.)

## II. STANDARDS OF REVIEW

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hull*

*v. Dutton*, 935 F.2d 1194, 1198 (11th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

5

### III. DISCUSSION

First, Defendant objects to the Recommendation's analysis of the applicable statute of limitations for Plaintiffs' claims. Next, Defendant challenges Magistrate Judge Varholak's findings regarding Plaintiffs' claims of express warranty, implied warranty of merchantability, and the scope of the Colorado Consumer Protection Act ("CCPA"). Finally, Defendant argues that the magistrate judge erred in failing to recommend severance of Plaintiffs' individual claims. The Court will address each objection in turn.

#### A. STATUTE OF LIMITATONS

Magistrate Judge Varholak concluded that: (1) "the accrual of the CCPA claims cannot be determined at this stage because it is unclear when Plaintiffs knew or should have known about the defect, or when the last in BMW's series of misrepresentations occurred"; and (2) "Plaintiffs have plausibly pleaded that their warranty claims could be tolled by [Defendant's] fraudulent concealment . . . ." (Doc. # 15 at 11, 17.) Defendant objects to each conclusion, arguing that Plaintiffs' CCPA claims accrued on the date they purchased their vehicles and that Plaintiffs have failed to plead fraudulent concealment sufficiently for purposes of tolling the statute of limitations. The Court agrees with the magistrate judge's conclusion that Plaintiffs' claims should not be dismissed on statute of limitations grounds at the motion to dismiss stage.

A claim under the CCPA accrues on "the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred," or when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or

deceptive act or practice." Colo. Rev. Stat. § 6-1-115. In Colorado, "[t]he critical inquiry of when an action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which the action may be brought." *Myers v. Healthmarkets, Inc.*, No. 08-cv-01533-CMA-CBS, 2009 WL 1292828, at *3 (D. Colo. May 8, 2009) (quoting *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 854 (Colo. App. 2007)).

"Whether a particular claim is time barred presents a question of fact and may only be decided as a matter of law when 'the undisputed facts clearly show that plaintiff had, or should have had the requisite information as of a particular date.'" *Id.* (quoting *Wagner v. Grange Ins. Ass'n*, 166 P.3d 304, 307 (Colo. App. 2007)); *see also Lassley v. Aminokit Labs., Inc.*, No. 15-cv-01531-REB-MJW, 2015 WL 9437879, at *2 (D. Colo. Nov. 18, 2015) (finding that because defendant did not identify any allegations establishing when plaintiffs knew or should have known of the alleged CCPA violations, the CCPA date was not conclusively established from the complaint, and the statute of limitations issue could not be resolved at the pleading stage), *report and recommendation adopted*, 2015 WL 9315742 (D. Colo. Dec. 23, 2015).

In the instant case, Plaintiffs' CCPA claims are subject to a three-year statute of limitations. Colo. Rev. Stat. §§ 4-2-725(1), 6-1-115, 13-80-101. Plaintiffs purchased their vehicles on December 14, 2014, October 17, 2017, July 20, 2013, respectively. (Doc. # 52 at 11.) Plaintiffs initiated this case on December 13, 2018. *See* (Doc. # 1). Defendant asserts that the claims accrued at the time of sale because Plaintiffs were aware of the

7

excessive oil consumption at the time they purchased the vehicles. (Doc. # 52 at 4–6.) Therefore, Defendant argues, the statute has run. (*Id*.)

However, "a CCPA claim can alternatively accrue on the date 'on which the last in a series' of false, misleading, or deceptive acts or practices occurred . . . ." (Doc. # 50 at 8) (citing Colo. Rev. Stat. § 6-1-115). Plaintiffs allege that they were precluded from knowing the severity of the defect because of Defendant's misrepresentations and concealment. *See* (Doc. # 22). Based on Plaintiffs' allegations in the First Amended Complaint, Defendant failed to disclose the defect to Plaintiffs. (*Id.* at 9.) Further, they allege Defendant issued technical service bulletins outlining the defect to all BMW automotive dealers, which suggests that Defendant was aware of the problem and consciously chose not to inform consumers. (*Id.* at 9–10.) Finally, Plaintiffs assert that Defendant continued to represent to BMW consumers that the oil consumption was normal and not a defect, despite Defendant's knowledge to the contrary. (*Id.* at 12.)

Although factual development through discovery may show that Plaintiffs should have known about the alleged defect when they purchased their vehicles based on, e.g. information that was publicly available at the time, that is not conclusively established by the allegations in the operative complaint. Rather, viewed in the light most favorable to Plaintiffs, their allegations plausibly suggest that Plaintiffs were unaware of the defect and Defendant concealed the fact that the engines may have been defective.[2]

---

[2] Plaintiffs' warranty claims are also subject to a three-year statute of limitations. Colo. Rev. Stat. §§ 4-2-725(1), 6-1-115, 13-80-101. However, "[a]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1168 (D. Colo. 2010) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d

Therefore, the accrual of Plaintiffs' CCPA claims involves a question of fact that cannot be resolved at this stage.

**B.      EXPRESS WARRANTY CLAIMS**

Each Plaintiff received the same Warranty with the purchase of their BMW vehicles. (Doc. # 22 at 6.) The coverage provided by that Warranty is undisputed and includes a promise to "repair or replace components found to be defective in material or workmanship." (*Id.*) In other words the Warranty covers "manufacturing defects" but not design defects. Plaintiffs argue that the excessive oil consumption is expressly covered by the Warranty as a manufacturing defect. Defendant, on the other hand, argues that if a defect exists at all, it is a design defect that is not expressly covered by the Warranty. *See* (*Id.*); (Doc. # 52).

Magistrate Judge Varholak determined that, "[e]ven if discovery ultimately demonstrates that the N63 engine defect is one in design, Plaintiffs' allegations are sufficient to establish their right to discovery to investigate the potential causes of the defect." (Doc. # 50 at 19) (citation omitted). Defendant objects and argues that "Magistrate Judge [Varholak] erred in failing to dismiss Plaintiffs' express warranty claims because the alleged design defect is not covered by the applicable warranty."

---

1275, 1288 n.13 (11th Cir. 2005)). Plaintiffs allege that Defendant issued a care package to consumers with that vehicle, which served to mask rather than correct the defect. (Doc. # 22 at 13.) Furthermore, Plaintiffs allege that Defendant's authorized dealerships represented that the oil consumption was normal and not defective, despite Defendant's knowledge to the contrary. (*Id.* at 17.) Therefore, it does not appear beyond a doubt that Plaintiffs can prove no set of facts that toll the statute at issue.

9

(Doc. # 52 at 6.) The Court concludes that the First Amended Complaint plausibly alleges the oil consumption is a manufacturing defect covered by the Warranty.

"It is well-settled that design defects are distinct from defects in material and workmanship." *In re Caterpillar, Inc.*, No. 1:14-cv-3722 (JBS-JS), 2015 WL 4591236, at *18 (D.N.J. July 29, 2015). "A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Sharma v. BMW of N. Am., LLC*, No. C-13-2274 MMC, 2014 WL 2795512, at *4 (N.D. Cal. June 19, 2014) (quotations omitted). "By contrast, a manufacturing defect exists when an item is produced in a substandard condition, i.e., where a manufacturer fail[s] to comply with its own design specifications." *Id.* (quotations omitted). A warranty that refers exclusively to defects in material or workmanship does not cover design defects. *See id.*; *see also Hindsman v. Gen. Motors LLC*, No. 17-cv-05337-JSC, 2018 WL 2463113, at *7 (N.D. Cal. June 1, 2018); *In re Caterpillar*, 2015 WL 4591236, at *18–19.

At this point in the instant case, it is unclear what type of defect, if any, resulted in the excessive oil consumption of the N63 engine. However, Plaintiffs need not prove definitively that the defect was covered by the Warranty for their claim to survive a motion to dismiss. Rather, Plaintiffs must state a claim to relief that is **plausible** on its face. *See Iqbal*, 556 U.S. at 678 (emphasis added).

Plaintiffs, in the First Amended Complaint, plead sufficient facts to support the claim that the defect was a manufacturing defect covered by the Warranty. Specifically, Plaintiffs set forth facts that the vehicles' oil consumption was excessive, unique, and generally recognized by the industry as a defect. *See* (Doc. # 22); *see also Schneider v.*

*BMW of N. Am.*, *LLC*, No. 18-CV-12239-IT, 2019 WL 4771567, at *1 (D. Mass. Sept. 27, 2019) (holding that Plaintiffs claims of a manufacturing defect in identical N63 engines are plausible on their face since the issue, while widespread, does not appear universal).

However, the discovery process may produce facts that warrant a different determination at the summary judgment stage of this case (e.g., Defendant may produce evidence proving the defect was the result of poor design). Accordingly, Defendant's Motion is denied without prejudice as to the dismissal of the express warranty claims.

**C.     IMPLIED WARRANTY OF MERCHANTABILITY**

Magistrate Judge Varholak concluded "that vehicles subject to engine failure are not merchantable and thus Plaintiffs have stated an implied warranty of merchantability claim." (Doc. # 50 at 23.) In its Objection, Defendant argues that Plaintiffs' safety concerns are "generic," "theoretical," and do not support a claim for breach of implied warranty of merchantability. (Doc. # 52 at 7.) The Court agrees with Magistrate Judge Varholak and finds that Plaintiffs' factual allegations are sufficient to state a claim.

The case law is consistent that, although a vehicle is operable, it may still be unsafe and unfit for ordinary use. *See, e.g.*, *Ashgari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013). The implied warranty of merchantability requires that the product be "fit for the ordinary purposes for which such goods are used," among other requirements. Colo. Rev. Stat. § 4-2-314(2)(c). In the vehicle context, "[s]ince cars are designed to provide transportation, the implied warranty of merchantability is simply

a guarantee that they will operate in a safe condition and substantially free of defects." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989); *see Trust Dep't of First Nat'l Bank of Santa Fe, Colo. Branch v. Burton Corp.*, 2013 WL 4884483, at *6 (D. Colo. Sept. 11, 2013) (the warranty of merchantability implies that goods are fit for their ordinary purposes). Furthermore, products liability law "grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty." *Carter v. Brighton Ford, Inc.*, 251 P.3d 1179, 1183 (Colo. App. 2010) (citing *Seely v. White Motor Co.*, 403 P.2d 145, 149 (1965)).

In the First Amended Complaint, Plaintiffs explain the impact oil deprivation can have on their vehicles' engines, how that depravation can cause the engines to seize, and the dangers an engine seizure creates. (Doc. # 22 at 14–15.) Specifically, Plaintiffs allege the defect is "unreasonably dangerous because it can cause engine failure while the subject vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing Plaintiffs, their passengers, and others who share the road with them to serious risk of accidents and injury." (*Id.* at 14.) Therefore, Plaintiffs assert that the defect "substantially impairs the use, value and safety of the subject vehicles . . . ." (*Id.* at 15.)

These pleadings are neither generic, nor theoretical, as Defendant asserts. The Court, therefore, finds that Plaintiffs' allegations are sufficient to state a claim for breach of the implied warranty of merchantability. The Court's determination is bolstered by at least two federal district courts that have recently held that nearly identical allegations regarding the N63 engine oil consumption defect were sufficient to state a claim for

breach of the implied warranty of merchantability. *See Bang v. BMW of N. Am., LLC*, No. CV 15-6945, 2016 WL 7042071 (D.N.J. Dec. 1, 2016); *see also Beshwate v. BMW of N. Am., LLC*, No. 1:17-CV-00417-SAB, 2017 WL 6344451 (E.D. Cal. Dec. 12, 2017).

**D.     EXTENSION OF THE CCPA**

In his Recommendation, Magistrate Judge Varholak concludes that the application of the Colorado Consumer Protection Act ("CCPA") to Mr. Ingram is not an overreach of the CCPA statute even though Mr. Ingram purchased his vehicle out-of-state.[3] Colo. Rev. Stat. § 6-1-101 *et seq.*; (Doc. # 50 at 33). He further explains that the CCPA appropriately applies to this case because: (1) all of the Plaintiffs reside in Colorado; (2) the Plaintiffs complained to Colorado BMW dealerships about the excessive oil consumption; and (3) those dealerships failed to disclose the defect, therefore harming Plaintiffs in Colorado. (*Id.*)

However, Defendant argues that the claim "impermissibly expands the reach of the CCPA," because Mr. Ingram purchased his vehicle in Illinois, and the CCPA "does not govern out-of-state sales." (Doc. # 52 at 10–11.) Defendant does not address the fact that the harm alleged occurred in Colorado. (*Id.*) For the reasons that follow, the Court agrees with the magistrate judge's conclusion that Mr. Ingram's claim does not impermissibly expand the scope of the CCPA.

---

[3] Magistrate Judge Varholak also addressed Defendant's arguments that Plaintiffs failed to plead with particularity that Defendant engaged in an unfair or deceptive trade practice and that Plaintiffs failed to allege a significant impact to the public. (Doc. # 50 at 26.) Defendant objects only to the extension of the CCPA claim. *See* (Doc. # 52). Therefore, the Court only addresses that objection. Fed. R. Civ. P. 72(b).

13

The purpose of the CCPA is to protect Colorado consumers. *See Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241–1242 (D. Colo. 2010). Therefore, the CCPA is liberally construed in light of its broad purposes, which include protecting consumers in a position of relative weakness, i.e., consumers lacking access to truthful information about a transaction, against a broad range of fraudulent and deceptive practices. (*Id.*) The Colorado Supreme Court has further noted that the scope of the CCPA extends to injury to property or property value. *Hall v. Walter*, 969 P.2d 224, 236 (Colo. 1998). Additionally, courts in this district have indicated that the CCPA is applicable to allegations of vehicle defects. *See Warner v. Ford Motor Co.*, 06-cv-02443, 2008 WL 4452338 (D. Colo. Sept. 30, 2008) (denying defendant's motion for partial summary judgment on plaintiffs' CCPA claims).

It is undisputed that Mr. Ingram purchased his vehicle in Illinois. (Doc. # 52 at 10.) However, regardless of where Mr. Ingram purchased the vehicle, the alleged harm resulting from the engine defect occurred in Colorado. Mr. Ingram was a Colorado resident and consumer at all times applicable to this case. *See* (Doc. # 22). Mr. Ingram took his vehicle to BMW dealers in Colorado, and the dealers allegedly failed to disclose the defect, giving rise to Mr. Ingram's claims of fraudulent and deceptive practices. (*Id.* at 4.) Further, the maintenance required on the vehicle and the costs incurred by Mr. Ingram all arose within the state. (*Id.*) Therefore, Mr. Ingram's claim does not impermissibly expand the scope of the CCPA.[4]

---

[4] The two cases cited by Defendant in its Objection are distinguishable. (Doc. # 52 at 9–10.) In *Airquip, Inc. v. HomeAdvisor, Inc.*, the court found that the plaintiffs had "fail[ed] to overcome the presumption that the CCPA does not apply extraterritorially," where the plaintiffs "do not dispute

**E.      SEVERANCE**

Magistrate Judge Varholak comprehensively addressed Defendant's request for severance of allegedly "misjoined" claims, noting that "each Plaintiff had the same N63 engine in their vehicle, experienced excessive engine oil consumption, and was provided with essentially identical written warranties for their engines . . . ." (Doc. # 50 at 35.) He further noted that "BMW had **uniform** knowledge of the engine oil defect and provided its authorized dealers with the **same** [technical service bulletins]." (*Id.*) (emphasis added). Defendant objects and argues that the claims arise from separate facts and distinct transactions, and therefore, the magistrate judge erred in failing to recommend severance of Plaintiffs' individual, misjoined claims. (Doc. # 52 at 11.) Again, the Court agrees with Magistrate Judge Varholak.

Misjoinder occurs when "there is no common question of law or fact or when . . . the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction." *Nasious v. City and Cty. of Denver-Denver Sheriff's Dep't*, 415 F. App'x 877, 880 (10th Cir. 2011) (quoting *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3rd Cir. 2006)). The remedy for misjoinder is not dismissal of the action. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action"). Federal Rule of Civil

---

that none of the plaintiffs reside[ ] in Colorado or [were] **harmed** in Colorado." *Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-cv-01849-PAB-KLM, 2017 WL 4222618, at *7 (D. Colo. Sept. 21, 2017) (emphasis added). Similarly, in *Gordon v. Chipotle Mexican Grill, Inc.*, the court dismissed the CCPA claims where none of the plaintiffs alleged facts suggesting the defendant's misconduct had affected them as actual or potential consumers in Colorado, and the plaintiffs neither made purchases from the defendant in Colorado nor suffered any harm in Colorado. No. 17-cv-1415-CMA-MLC, 2018 WL 3653173, at *22 (D. Colo. Aug. 1, 2018), *report and recommendation adopted in part, rejected in part on other grounds*, 344 F. Supp. 3d 1231 (D. Colo. 2018).

Procedure 21 provides that "[o]n motion or on its own, the court may . . . sever any claim against a party," resulting in separate actions.

In the instant case, Plaintiffs seek relief arising out of the same transactions or occurrences, namely, Defendant's use of defective N63 engine components and refusal or failure to repair those engines in violation of its Warranty. All three Plaintiffs have the same N63 engine in their respective vehicles, and they all experienced excessive engine oil consumption as a result of the allegedly defective engine. All three Plaintiffs had written warranties covering the engine which were substantively identical. In each case, BMW's authorized dealers told Plaintiffs the excessive engine oil consumption did not warrant any repairs and failed to repair the vehicles.

Likewise, Plaintiffs' claims share common questions of law and fact. These include: whether defects in the same N63 engines result in excessive oil consumption; whether and when BMW became aware of the defect in the N63 engines; what BMW instructed its dealerships regarding how to address complaints of oil consumption; and whether, as Plaintiffs allege, BMW deliberately concealed the defect from Plaintiffs. *See, e.g.*, *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986); *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974) (holding that the defendant's conduct was basic to each plaintiff's recovery and therefore the plaintiffs were properly joined); *Schneider*, 2019 WL 4771567, at *5 (D. Mass. Sept. 27, 2019) (holding that plaintiffs' claims against BMW for a manufacturing defect arose out of the same facts, therefore joinder is appropriate); *Miller v. Nissan N. Am., Inc.*, No. 4:18CV00340RLW, 2018 WL 4211370, at *3 (E.D. Mo. Sept. 4, 2018); *El Fakih v.*

*Nissan N. Am., Inc.*, No. 18-CV-60638, 2018 WL 4193675, at *5 (S.D. Fla. July 26, 2018).

For these reasons, the Court is satisfied that the Recommendation of Magistrate Judge Varholak is sound, and a severance of "misjoined" claims is not warranted in this case.

IV. **CONCLUSION**

Based on the foregoing, the Court ORDERS that Magistrate Judge Varholak's January 7, 2020 Recommendation (Doc. # 50) is AFFIRMED and ADOPTED as an Order of this Court. It is

FURTHER ORDERED that Defendant's Objection (Doc. # 52) is OVERRULED. It is

FURTHER ORDERED that Defendant's Motion to Dismiss or, in the Alternative, for Severance of Misjoined Claims (Doc. # 26) is DENIED.[5]

DATED: March 19, 2020

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge

---

[5] As in *Carroll*, the Court concludes that "[t]he statute of limitations issue is better dealt with by way of a motion for summary judgment, once an evidentiary record has been developed." 2019 WL 4243153, at *8. There, the court established an efficient bifurcated discovery process, according to which, "the parties [had] 90 days . . . to conduct discovery into the statute of limitations issue. After the close of the 90-day period, Defendants [had] an additional 30 days to file a motion for summary judgment on the statute of limitations issue, if . . . warranted." *Id*. After the statute of limitations issue was resolved, the court indicated that it would permit the defendants to file a second motion for summary judgment concerning the merits if necessary. *Id*. Although the Court leaves the ultimate decision regarding the discovery schedule to Magistrate Judge Varholak's discretion, a similar bifurcated approach may be appropriate in this case.